IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEARNQUEST INCORPORATED<br><br>**Plaintiff,**<br><br>v.<br><br>KYNDRYL, Inc.<br><br>**Defendant.** | No. |

## COMPLAINT

Plaintiff, through counsel Sherman Silverstein Kohl, Rose & Podolsky, P.A., by way of Complaint against Defendant, hereby say, state, and aver as follows:

**I.    PARTIES AND JURISDICTION**

1. Plaintiff LearnQuest Incorporated ("LearnQuest") is a Pennsylvania corporation with a principal place of business at 1900 Market Street, Suite 800 Philadelphia, PA 19103. LearnQuest is a citizen of Pennsylvania.

2. Plaintiff is informed and believes, and thereon alleges, that Kyndryl, Inc. (together, "Kyndryl") is responsible for the obligations at issue. To the extent the Agreement (as defined below) identify a different Kyndryl entity, that entity is named here by reference, and Kyndryl, Inc. is a successor-in-interest, alter ego, and/or agent of one another with respect to the transactions alleged herein.

3. Defendant Kyndryl is believed to be a Delaware corporation with a principal place of business at One Vanderbilt Ave., New York, New York, 10017. Kyndryl is a citizen of New York and Delaware.

4. Kyndryl is believed to have qualified to conduct business as a foreign corporation in the State of New York.

5. The jurisdiction of this Court is based upon 28 U.S.C. Sections 1332 in that the Plaintiff is a citizen of Pennsylvania, Defendant Kyndryl is a citizen of New York and Delaware, and the amount in controversy exceeds One Hundred Thousand Dollars ($100,000).

6. Venue is proper in this District under 28 U.S.C. Section 1391(b) (1) because Kyndryl resides in this District and under 28 U.S.C. Section 1391(b) (2) because a substantial part of the events or omissions giving rise to the claim— including negotiation, execution, and administration of the SOW—occurred here. Kyndryl maintains its principal executive offices at One Vanderbilt Avenue, New York, New York, and key witnesses and documents are located in this District.

7. Kyndryl has agents, transacts business, and/or is found within this judicial district. The cause of action alleged arose in part within this district. The interstate trade and commerce described herein is and has been carried out within this district.

## II.     FACTS COMMON TO ALL COUNTS

8. Plaintiff hereby incorporates the allegations in paragraphs 1 through 7 of the Complaint as if each were set forth herein.

9. LearnQuest is a leading worldwide provider of global IT and business skills training for businesses and government agencies.

10. According to Kyndryl's website, Kyndryl is the "world's largest provider of IT infrastructure services."

11. In or around November 2021, International Business Machines Corporation ("IBM") spun off its Global Technology Solutions business division(s), to form a new business

entity presently known as Kyndryl. It is believed IBM initially retained an ownership interest in Kyndryl which has since been divested.

12. Kyndryl now operates independent of IBM.

13. For more than 12 years, LearnQuest has maintained a strategic partnership with IBM which, prior to the November 2021 divestiture, included the Global Technology Solutions business division(s).

14. In recognition of LearnQuest's achievements, IBM designated LearnQuest as its Worldwide Training Partner of the Year.

15. For approximately 5 months after the November 2021 divestiture, Kyndryl relied on IBM's supplier relationships, including IBM's relationship and existing contracts with LearnQuest, to fulfill Kyndryl's needs for Kyndryl's internal IT and business skills training.

16. Beginning around November 2021, and continuing through March 2022, Kyndryl and LearnQuest discussed and negotiated the terms and conditions under which Kyndryl would engage LearnQuest and designate LearnQuest as "Kyndryl's Global designated Managed Learning Services ("MLS") provider".

17. During the course of those discussions, Kyndryl committed to not signing agreements with IBM's previous large existing pool of training providers or new training providers and to sign an agreement with LearnQuest as Kyndryl's exclusive global MLS provider. These discussions were held primarily between LearnQuest's executive team represented by Yuri Schneiberg and Dimitri Schneiberg and Suman Chandra - Global Category Strategist Academy, Consulting & Integrator Services of Kyndryl.

18. On or around March 11, 2022, Kyndryl and LearnQuest entered into a valid, enforceable, and binding Supplier Relationship Agreement #CW3526402 (the "SRA"). The

SRA is the base agreement between Kyndryl and LearnQuest for purposes of Kyndryl purchasing certain deliverables and services from LearnQuest.

19. On or around March 31, 2022, Kyndryl and LearnQuest entered into a valid, enforceable, and binding Statement of Work #3529341 (the "SOW")[1] which states, among other things, that "LearnQuest is Kyndryl's Global designated Managed Learning Services Provider."

20. The SOW states verbatim that "LearnQuest is Kyndryl's Global designated Managed Learning Services Provider." The term "designated Managed Learning Services Provider" is commonly understood to be the provider to whom the enterprise routes all managed-learning work in the first instance.

21. Due to the confidential nature of the SRA, SOW, and any subsequent amendments thereto, the relevant documents are filed under seal.

22. In exchange for designating LearnQuest as "the Kyndryl global MLS provider", LearnQuest committed to, among other things, the following:

a) Providing Kyndryl with the global volume discounts predicated upon Kyndryl's current and expected training budget;

b) Providing Kyndryl with a special rebate program available only to MLS clientele;

c) Providing Kyndryl with a range of value-added services, including but not limited to:

    i. Access to and customization of LearnQuest's client and student portals;

    ii. Analysis of the spending behavior and providing recommendations for more efficient training services;

    iii. Updating Kyndryl management on industry trends;

---

[1] The SRA and SOW will hereafter collectively be referred to as the "Agreement."

      iv.    Providing quarterly management reports; and

      v.    Participating in quarterly leadership meetings to reflect on the prior quarter key performance indicators, Kyndryl's strategic initiatives pertaining to training, earned rebates, etc.

23. In furtherance of LearnQuest's engagement as the designated MLS provider for Kyndryl, Kyndryl undertook various actions including, but not limited to, the following:

a) Kyndryl shared with LearnQuest Kyndryl's sensitive information pertaining to quarterly and annual training budgets, overall learning strategies, potential savings and improving efficiencies with LearnQuest playing major role in those discussions;

b) Kyndryl discussed its short-term and long-term training strategies; and

c) Kyndryl introduced LearnQuest as Kyndryl's designated MLS provider to other stakeholders and business leaders.

24. In reliance upon the SOW, LearnQuest invested substantial monies into additional human resources and client portal and student portal customization.

25. At the time of the negotiation and execution of the SOW as Kyndryl's designated MLS provider, it was anticipated that LearnQuest would be engaged to provide at least $20 million dollars of learning services per year to Kyndryl during the term of the SOW through its expiration.

26. On or around March 25, 2024, Kyndryl and LearnQuest amended the SOW to extend the term of the SOW until March 31, 2025.

27. The SOW incorporated the terms of the SRA.

28. Specifically, the SOW sets forth that LearnQuest is Kyndryl's global designated Managed Learning Services Provider.

29. Under the SOW, LearnQuest agreed to provide to Kyndryl training and training-related services including, but not limited to, instructor-led public/private training, self-paced training/e-Learning, mentoring, curriculum development, voucher purchasing, assistance with technical conferences, certification exams, LearnPass Prepay credits, and Education Subtiering Services (collectively the "Training Deliverables").

30. Section 15 vi. of the SRA provides that, "In the event of a conflict, the order of precedence will be: A) any accepted changes to price, payment, quantity or delivery terms contained in the [Work Authorization] WA; B) the relevant SOW (including Attachments thereto); and C) this SRA (including Attachments thereto)." Thus, in the event of any conflict between the terms between the SRA and the SOW, the terms of the SOW take precedence over the terms of the SRA.

31. LearnQuest performed and fulfilled its duties under the Agreement. Kyndryl never expressed any displeasure with LearnQuest's performance, nor did Kyndryl raise any concerns about LearnQuest's future performance under the Agreement.

32. Subsequent to entering into the SOW, (i) Kyndryl publicly referred to LearnQuest as Kyndryl's MLS provider to its stakeholders, (ii) LearnQuest conducted presentations outlining its capabilities and offerings to such stakeholders, and (iii) such stakeholders were told that all MLS requests were to go through LearnQuest, all of which confirm LearnQuest was Kyndryl's MLS provider.

33. At some point while the term of the SOW was in effect, Kyndryl went through internal reorganizations which impacted many functional areas, including global procurement

and the learning teams. As a result of these reorganizations, new individuals were put in roles for managing Kyndryl's MLS business; however, the new individuals failed to recognize or honor the MLS services commitment to LearnQuest under the SOW.

34. On July 14, 2023, Kyndryl issued a Request for Proposal (the "RFP") entitled, "RFP for Managed Learning Services." The nature of the RFP evidenced Kyndryl's desire to outsource some of the operational and administrative tasks within the learning organization. During the RFP process, LearnQuest was told by Kyndryl that this was an opportunity for LearnQuest to its services beyond the services already provided and covered under the SOW.

35. By awarding NIIT Limited, an India Corporation ("NIIT"), the Training Deliverables in the RFP that were previously committed to LearnQuest, Kyndryl breached the SOW by not utilizing LearnQuest to provide such MLS.

36. Upon information and belief, NIIT began delivering MLS for Kyndryl on or around October 1, 2024, while Kyndryl was still under its agreement with LearnQuest for LearnQuest to deliver such MLS.

37. Upon information and belief, Kyndryl has since March 31, 2022, engaged providers other than LearnQuest to provide more than $50 million dollars in MLS through March 31, 2025, in breach of Kyndryl's obligation to engage LearnQuest to provide such MLS.

38. All conditions precedent to LearnQuest's claims have occurred or been waived. See Fed. R. Civ. P. 9(c).

## COUNT ONE

### Breach of Contract

39. Plaintiff hereby incorporates the allegations in paragraphs 1 through 38 of the Complaint as if each were set forth herein.

40. As set forth above, LearnQuest and Kyndryl had a valid enforceable Agreement whereby LearnQuest would be the global MLS provider for Kyndryl.

41. In reliance on the terms of that Agreement, LearnQuest expended hundreds of thousands of dollars in preparing to implement that Agreement and to fully serve Kyndryl's needs.

42. Kyndryl has breached that Agreement by contracting with other MLS providers to perform services Kyndryl engaged LearnQuest to exclusively perform.

43. As a direct and proximate result of Kyndryl's breach, LearnQuest has suffered general (benefit-of-the-bargain) damages consisting of the profits and margins LearnQuest would have earned on SOW-covered managed-learning services that Kyndryl was required to route to LearnQuest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an Order awarding Plaintiff LearnQuest Judgment against Defendant Kyndryl in excess of One Hundred Thousand Dollars ($100,000), together with attorney's fees, interest, and costs and such other relief as the Court deems just.

## COUNT TWO

### Breach of the Implied Covenant of Good Faith and Fair Dealing

44. Plaintiff hereby incorporates the allegations in paragraphs 1 through 43 of the Complaint as if each were set forth herein.

45. As set forth above, LearnQuest and Kyndryl had a valid enforceable Agreement whereby LearnQuest would be the global MLS provider for Kyndryl.

46. During negotiations of that Agreement, LearnQuest and Kyndryl had discussions relating to LearnQuest being the global MLS provider to Kyndryl during the term of the Agreement.

4147460.1

47. LearnQuest signed the SOW with that understanding.

48. In reliance on the terms of that Agreement and the discussions during negotiations of the Agreement, LearnQuest expended hundreds of thousands of dollars in preparing to implement that Agreement and to fully serve Kyndryl's needs.

49. Kyndryl has breached that Agreement by contracting with other MLS providers to perform services Kyndryl engaged LearnQuest to perform.

50. Despite the discussions during negotiations indicating that LearnQuest would be Kyndryl's MLS provider during the term of the Agreement, and despite the language of the SOW indicating that LearnQuest is Kyndryl's designated Global MLS provider, Kyndryl has contracted with other parties to provide the exact same services that LearnQuest was engaged to provide.

51. Kyndryl's actions have denied LearnQuest of the benefit of the bargain.

52. As a direct and proximate result of this breach, LearnQuest has suffered direct damages in excess of $100,000.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an Order awarding Plaintiff LearnQuest Judgment against Defendant Kyndryl in excess of One Hundred Thousand Dollars ($100,000), together with attorney's fees interest, and costs.

## COUNT THREE

### Promissory Estoppel

53. Plaintiff hereby incorporates the allegations in paragraphs 1 through 52 of the Complaint as if each were set forth herein.

54. Kyndryl made clear and unambiguous promises that LearnQuest would serve as Kyndryl's designated provider for MLS and would be given the first opportunity to deliver such services. Kyndryl reasonably expected LearnQuest to rely, and LearnQuest did reasonably rely

9

by dedicating personnel, configuring platforms, and foregoing other opportunities. Enforcement is necessary to avoid injustice.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an Order awarding Plaintiff LearnQuest Judgment against Defendant Kyndryl in excess of One Hundred Thousand Dollars ($100,000), together with attorney's fees, interest, and costs and such other relief as the Court deems just.

## COUNT FOUR

### Unjust Enrichment

55.     Plaintiff hereby incorporates the allegations in paragraphs 1 through 54 of the Complaint as if each were set forth herein.

56.     To the extent any contract is determined inapplicable or unenforceable, Kyndryl was unjustly enriched by retaining the benefits of LearnQuest's program build-out, know-how, and vendor enablement while diverting managed-learning work to others.  Equity and good conscience require Kyndryl to disgorge the value of those benefits to LearnQuest.

57.     Kyndryl made clear and unambiguous promises that LearnQuest would serve as Kyndryl's designated provider for MLS and would be given the first opportunity to deliver such services. Kyndryl reasonably expected LearnQuest to rely, and LearnQuest did reasonably rely by dedicating personnel, configuring platforms, and foregoing other opportunities.  Enforcement is necessary to avoid injustice.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an Order awarding Plaintiff LearnQuest Judgment against Defendant Kyndryl in excess of One Hundred Thousand Dollars ($100,000), together with attorney's fees, interest, and costs and such other relief as the Court deems just.

                    **SHERMAN, SILVERSTEIN, KOHL,**
                        **ROSE & PODOLSKY, P.A.**

**By:** */s/Alan C. Milstein*
       **Alan Milstein**
       **Attorney I.D. 38387**
       **308 Harper Drive**
       **East Gate Corporate Center, Suite 200**
       **Moorestown, NJ 08057**
       **Telephone:  (856) 662-0700**
       **Facsimile:  (856) 661-2078**
       **Attorneys for Plaintiff**

**Date:  August 20, 2025**